```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

INGLISH INTERESTS, LLC, a Texas
limited liability corporation,

                Plaintiff,

vs.                                    Case No. 2:10-cv-367-FtM-29DNF

SEMINOLE TRIBE OF FLORIDA, INC., a
corporation authorized under the
Indian Reorganization Act,

                Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendant Seminole Tribe of Florida Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim, and Failure to Join an Indispensible Party (Doc. #5) filed on August 13, 2010. Plaintiff filed a response on August 27, 2010 (Doc. #6.) With the permission of the Court, defendant filed a Reply (Doc. #10) on September 21, 2010.

### I.

Plaintiff Inglish Interests, LLC (plaintiff or Inglish) alleges the following facts in the Complaint: Defendant, Seminole Tribe of Florida, Inc. (defendant or STOFI) owns a citrus grove located in Glades and Hendry Counties on the Big Cypress and Brighton reservations (the Grove Property). (Doc. #1, ¶¶ 10, 11.) Inglish sought to lease the Grove Property from STOFI in order to harvest the crops and market them for profit. (Doc. #1-1, ¶¶ 3,

4.) The parties signed a letter of intent (LOI) which memorialized their preliminary agreement regarding an anticipated ten-year property lease. (Doc. #1-1.) While the parties intended to enter into a formal lease agreement, one was never executed. (Doc. #1-1.) Instead, the parties operated pursuant to the LOI for approximately fifteen months. (Doc. #1, ¶ 15.) The LOI contains eight short paragraphs and makes no mention of tribal sovereign immunity. (Doc. #1-1.)

A dispute ensued, and plaintiff has filed a four-count Complaint alleging state law claims for breach of contract, imposition of a crop lien pursuant to Fla. Stat. § 713.59, a right to emblements, and unjust enrichment. Federal jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332 (Doc. #1, ¶ 2), and it is alleged that STOFI consented to the jurisdiction of the court by virtue of its Corporate Charter, Art. VI, Sec. 9.[1]

STOFI has filed a motion to dismiss asserting, among other things[2], that sovereign immunity precludes subject matter jurisdiction over the case. In response, plaintiff asserts that

---

[1] Plaintiff now concedes that the Charter attached as Exhibit A to the Complaint had been amended prior to any of the events alleged in the Complaint, and concedes the authenticity of the Amended Charter (Doc. #5-1) filed by defendant. See Doc. #6, pp. 3-4.

[2] STOFI also seeks dismissal for failure to state a claim upon which relief may be granted, and for failure to join a required party.

STOFI is a corporation separate and distinct from the Seminole Tribe of Florida itself (Doc. #6, pp. 5-8), and although the Seminole Tribe of Florida may enjoy sovereign immunity, STOFI does not. (Doc. #6, p. 13.)

**II.**

The Seminole Tribe of Florida (the Tribe) has long been recognized as an Indian tribe. It has been placed on the Department of Interior's "list of recognized tribes" pursuant to 25 U.S.C. §§479a-1, including at all times relevant to the events of this case. See 75 Fed. Reg. 60810 (2010), 74 Fed. Reg. 40218 (2009), 73 Fed. Reg. 18553 (2008).

The Tribe applied for, and in 1957 was granted, a Corporate Charter (Doc. #1-1) pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 477[3]. The Indian Reorganization Act itself gave no powers to the corporation, and the corporation has only those powers granted by the Secretary of the Interior by the terms of the

---

[3]In 1957 25 U.S.C. § 477 provided in pertinent part:

The Secretary of the Interior may, upon petition by at least one-third of the adult Indians, issue a charter of incorporation to such tribe: * * *. Such charter may convey to the incorporated tribe the power to purchase, * * * own, hold, manage, operate, and dispose of property of every description, real and personal, * * * and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law, * * *.

charter issued. <u>Maryland Cas. Co. V. Citizens Nat'l Bank of W. Hollywood</u>, 361 F.2d 517, 520 (5th Cir. 1966).[4]

The United States, acting through the Department of the Interior, issued a Corporate Charter to the Seminole Tribe of Florida in order to further the economic development of the Tribe, secure an assured economic independence for Tribe members, and provide for the proper exercise of various functions by the Tribe which had previously been performed by the Department of the Interior. (Doc. #1-1, Art. II, §1.) The Corporate Charter chartered the Tribe "as a body politic and corporate of the United States of America under the corporate name 'The Seminole Tribe of Florida, Inc.'" (Doc. #1-1, Art. II, § 1), and conferred "certain corporate rights, powers, privileges, and immunities" upon the Tribe. (<u>Id.</u> at Art. II, § 1.) The Seminole Tribe of Florida, Inc. was described as a "Federal corporation" with perpetual succession. (<u>Id.</u> at Art. III, § 1.) The Corporate Charter further provided that the corporation was a "membership corporation" whose members consisted of all persons who were or became enrolled members of the Tribe as provided by its Constitution and bylaws. (<u>Id.</u> at Art. IV, §1.) The powers of the corporation set forth in the original

---

[4] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Corporate Charter included a "sue and be sued" provision. (Id. at Art. VI, § 9.)

The Corporate Charter was amended in 1963, 1967, 1983, 1996, and 2002, and the current version (the Amended Charter) is filed at Doc. #5-1. The amendment of note in this case is the 1996 amendment to Article VI, §9, which replaced the "sue and be sued" language with the following as a corporate power given to the Seminole Tribe of Florida, Inc.:

> To waive its sovereign immunity from suit, but only if expressly stated by contract that such is the case and that such waiver shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien, or attachment upon the property of the Seminole Tribe of Florida, Inc., other than income or chattels especially pledged or assigned pursuant to such contract.

(Doc. #7-1, p. 5.)

### III.

It is axiomatic that federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Federal judicial power is extended only to "Cases" or "Controversies" within the meaning of Art. III, § 2 of the United States Constitution, and then only if properly authorized by Congress. Hertz Corp. v. Friend, 130 S. Ct. 1181, 1187-88 (2010). The party commencing suit in federal court has the burden of establishing the existence of federal jurisdiction. Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079,

1085 (11th Cir. 2010).  Here, that burden is upon plaintiff Inglish.

There are two jurisdictional issues in this case. While there is clearly a case or controversy between the parties, a federal court must have subject matter jurisdiction pursuant to a Congressional grant of authority.  This requirement is often satisfied by the federal question statute, 28 U.S.C. § 1331, or the diversity of citizenship statute, 28 U.S.C. § 1332.  The Court will *sua sponte* address the propriety of the Complaint's assertion of subject matter jurisdiction.  Second, even if a federal court has statutory jurisdiction, Indian sovereign immunity is a "consideration [which] determines whether a court has jurisdiction to hear an action." Taylor v. Alabama Intertribal Council, Title IV J.T.P.A., 261 F.3d 1032, 1034 (11th Cir. 2001).

The questions of subject matter jurisdiction and Indian sovereign immunity require separate determinations. Auto-Owners Ins. Co. v. Tribal Court of the Spirit Lake Indian Reservation, 495 F.3d 1017, 1020 (8th Cir. 2007).  While a federal court may not rule on the merits of a case without first determining it has subject matter jurisdiction, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-102 (1998), there seems to be no mandatory sequence in which these two issues must be addressed. See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584

(1999). However, since at least one Circuit has held that the court must first address subject matter jurisdiction prior to Indian sovereign immunity, <u>Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.</u>, 207 F.3d 21, 28 (1st Cir. 2000), the Court will do so.

**A.**

Two possible bases for federal subject matter jurisdiction exists in this case – diversity of citizenship and federal question jurisdiction.

**(1)**

It is well established that a federal court does not have diversity of citizenship jurisdiction in a case involving an Indian tribe. An Indian tribe is not considered a foreign state. <u>Cherokee Nation v. Georgia</u>, 5 Pet (30 U.S.) 1, 16-18 (1831); <u>Oglala Sioux Tribe v. C&W Enters., Inc.</u>, 487 F.3d 1129, 1130 n.2 (8th Cir. 2007). An <u>un</u>incorporated Indian tribe is not a citizen of any state. <u>Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.</u>, 607 F.3d 1268, 1276 (11th Cir. 2010). The other circuits which have addressed the issue agree. <u>Ninigret Dev. Corp.</u>, 207 F.3d at 27; <u>Frazier v. Brophy</u>, 358 Fed. Appx. 212 (2d Cir. 2009); <u>Romanella v. Hayward</u>, 114 F.3d 15, 16 (2d Cir. 1997); <u>Tribal Court of the Spirit Lake Indian Reservation</u>, 495 F.3d at 1020; <u>Cook v. AVI Casino Enters. Inc.</u>, 548 F.3d 718, 722 (9th Cir. 2008); <u>Am. Vantage Cos. v. Table Mt. Rancheria</u>, 292 F.3d 1091, 1098

(9th Cir. 2002); <u>Gaines v. Ski Apache</u>, 8 F.3d 726, 729 (10th Cir. 1993). Therefore, the presence of an Indian tribe as a party - essentially a "stateless" entity - destroys diversity jurisdiction. <u>See, e.g.</u>, <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 829 (1989).

In this case, however, the defendant is not literally the Tribe in its traditional sovereign sense, but an <u>in</u>corporated "arm" of the Tribe. There are three ways an Indian tribe may incorporate: Under the federal statute, 25 U.S.C. § 477; under state law; and under tribal law. The Circuits have split on the issue of the impact of incorporation on diversity jurisdiction. In the Eighth Circuit, an incorporated agency or sub-entity of the tribe is considered part of the Indian tribe and is not a citizen of any state for diversity purposes. <u>Tribal Court of the Spirit Lake Indian Reservation</u>, 495 F.3d at 1021; <u>Hagen v. Sisseton-Wahpeton Cmty. Coll.</u>, 205 F.3d 1040, 1043 (8th Cir. 2000). In the Ninth Circuit, "[a]n incorporated tribe, or an incorporated arm of a tribe, is like any other corporation, ordinarily a citizen of the state in which it resides." <u>Table Mt. Rancheria</u>, 292 F.3d at 1095 n.1 (citations omitted). The Tenth Circuit has stated that an Indian tribe's constitutional and corporate entities are separate and distinct, <u>Ski Apache</u>, 8 F.3d at 729; <u>Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation</u>, 673 F.2d 315, 320 (10th Cir. 1982), and that a tribe incorporated under § 477 "may be considered

a citizen of the state of its principal place of business for diversity jurisdiction purposes." Ski Apache, 8 F.3d at 729.

The Court's analysis is slightly different. As discussed above, STOFI is a federally chartered corporation, i.e. a "federal corporation." (Doc. #1-1, Art. III, §1.) As a general rule, a corporation chartered pursuant to federal law is not "a citizen of any state for diversity purposes and diversity jurisdiction would not exist unless the corporation's activities were sufficiently 'localized' in one state." Loyola Fed. Sav. Bank v. Fickling, 58 F.3d 603, 606 (11th Cir. 1995)(citations omitted).

> Determining whether a federal corporation is localized for diversity purposes should not be simply a question as to whether that corporation's activities are exclusive to one state. Such an evaluation should involve a more expansive investigation into the corporation's business. A variety of factors are relevant to this inquiry, such as the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature.

Id. The allegations in the Complaint are insufficient to allow the Court to infer localized activities for diversity purposes. See Westcap Gov't Secs., Inc. v. Homestead Air Force Base Fed. Credit Union, 697 F.2d 911, 912 n.1 (11th Cir. 1983). Accordingly, plaintiff has failed to allege diversity as a basis for subject matter jurisdiction.

### (2)

Plaintiff has also failed to allege federal question as a basis for subject matter jurisdiction. While the Complaint refers

to defendant as "a corporation authorized under the Indian Reorganization Act, 25 U.S.C. § 477," (Doc. #1, ¶ 7), it does not specifically rely upon federal question jurisdiction under § 1331. At one point in time, being a federally chartered corporation was sufficient to assert federal question jurisdiction. Pac. R.R. Removal Cases, 115 U.S. 1 (1885); Osborn v. Bank of United States, 22 U.S. 738 (1824). However, 28 U.S.C. § 1349 precludes federal jurisdiction unless the United States owns more than one-half of the capital stock of such a federal corporation. There is no such assertion in this case, and the Amended Charter indicates the corporation is a membership corporation, not a stock corporation.[5] Additionally, a federal court does not have subject matter jurisdiction under the federal question statute simply "because an Indian tribe is a party or the case involves a contract with an Indian tribe." Miccosukee Tribe, 607 F.3d at 1273 (citation omitted). See also Tribal Court of the Spirit Lake Indian Reservation, 495 F.3d at 1021; Stock West, Inc. v. Confederated Tribes of Colville Reservation, 873 F.2d 1221, 1225-26 (9th Cir. 1989). Finally, even if there was a basis for federal question jurisdiction, plaintiff would have to exhaust available remedies in the tribal court system before pursuing relief in federal court. National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S.

---

[5] 28 U.S.C. § 1362 is not applicable because the civil action was not brought "by" an Indian tribe or band. The parties cite no other specific jurisdictional statute applicable to the Seminole Tribe of Florida, e.g., 25 U.S.C. §1725(d)(1).

845, 855-56 (1985); Tribal Court of the Spirit Lake Indian Reservation, 495 F.3d at 1021-23.

In short, the Court concludes that the Complaint does not adequately allege subject matter jurisdiction. Although the Court would normally allow leave to amend, the Court proceeds to determine whether the Indian sovereign immunity issue renders amendment futile.

**B.**

The sovereign immunity principles applicable to an American Indian tribe are well settled. United States v. Kagama, 118 U.S. 375, 382 (1886); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); Kiowa Tribe v. Mfg. Techs., Inc., 523 U.S. 751, 754-55 (1998). An Indian tribe has the common-law immunity from suit traditionally enjoyed by sovereign powers regardless of the relief sought, including money damages or equitable relief. Freemanville Water Sys. v. Poarch Band of Creek Indians, 563 F.3d 1205, 1207-08 (11th Cir. 2009)(citations omitted). Congress has the power to abrogate such immunity, but may only do so expressly and with clear and unequivocal language; any ambiguity as to intent must be resolved in favor of the tribe. Freemanville Water Sys., 563 F.3d at 1208. Additionally, a tribe may waive its sovereign immunity, Kiowa Tribe, 523 U.S. at 754 (citing Three Affiliated Tribes of Ft. Berthold Reservation v. Wold Engineering, 476 U.S. 877, 890 (1986)), but such a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo, 436 U.S.

at 58 (quoting United States v. Testan, 424 U.S. 392, 399 (1976))(internal quotations omitted).  Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Sanderlin v. Seminole Tribe, 243 F.3d 1282, 1285 (11th Cir. 2001), quoting Kiowa Tribe, 523 U.S. at 754.  See also Tamiami Partners Ltd. v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1048 (11th Cir. 1995).

Under these principles, it is clear that the Tribe would be immune in this case.  Plaintiff argues that these legal principles are simply not applicable because it has sued the Seminole Tribe of Florida, Inc., not the Seminole Tribe of Florida.  Thus, the specific issue raised is whether the defendant, a federally chartered corporation formed pursuant to Section 17 of the Indian Reorganization Act of 1934, 25 U.S.C. § 477, is entitled to sovereign immunity under the facts of this case.  For the reasons set forth below, the Court concludes that the corporation is entitled to such immunity.

First, it is clear from Maryland Casualty that the Tribe did not lose its sovereign immunity simply by being incorporated pursuant to § 477.  Id. at 520-22.  See also Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc., 585 F.3d 917, 921 (6th Cir. 2009)("Because the language of Section 17 does not explicitly waive sovereign immunity, we conclude that it should not be interpreted to do so impliedly....");  Table Mountain Rancheria, 292 F.3d at

-12-

1099 ("A tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so."). Congress knew how to abrogate sovereign immunity if that was its intent. See, e.g., 25 U.S.C. § 450f(c)(3)("Any policy of insurance obtained or provided. . . pursuant to this subsection shall contain a provision that . . . shall waive any . . . defense [relying on] sovereign immunity of an Indian tribe from suit . . . ."); 25 U.S.C. § 2710(d)(7)(A)("The United States district courts shall have jurisdiction over . . . any cause of action initiated by a State . . . to enjoin a class III gaming activity . . . ."); see also Kiowa Tribe, 523 U.S. at 758-59.

Second, a charter itself may abrogate the tribe's sovereign immunity, but in this case the charter did not do so. As in Maryland Casualty, the Court looks to the language of the charter, in this case the Amended Charter, to see if sovereign immunity has been abrogated. 361 F.2d at 520-22. Article VI, section 9 of STOFI's corporate charter, as amended in 2002, states that the corporation shall have the following power:

> To waive its sovereign immunity from suit, but only if expressly stated by contract that such is the case and that such waiver shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien, or attachment upon the property of the Seminole Tribe of Florida, Inc., other than income or chattels especially pledged or assigned pursuant to such contract.

(Doc. #7-1, p. 5.) Thus, the Amended Charter both presumed that the corporation had sovereign immunity and allowed the

corporation to waive sovereign immunity, but did not itself constitute such a waiver or consent.

Third, a tribal corporation may also expressly waive immunity by agreement. Tamiami Partners, 63 F.3d at 1048; Memphis Biofuels, 585 F.3d at 921. Here, the LOI does not contain an express waiver of sovereign immunity.[6] Plaintiff has not cited to any other document which includes such a waiver.

Finally, case law has extended Indian sovereign immunity to entities other than the literal "tribe." Taylor v. Alabama Intertribal Counsel Title IV J.T.P.A., 261 F.3d 1032, 1036 (11th Cir. 2001)(applying Indian sovereign immunity to intertribal consortium). As recently summarized,

> Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity. The broad interpretation of tribal sovereign immunity can trace its origins to Congress' desire to promote the goal of Indian self-government, including its "overriding goal" of encouraging tribal self-sufficiency and economic development, as well as to Executive Branch policies, and judicial opinions. As the Ninth Circuit has noted, immunity for subordinate economic entities directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general.

---

[6] While the parties contemplated entering into a final lease agreement, one was never executed.

Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort, ___ F.3d ___, No. 08-1298, 2010 WL 5263143 (10th Cir. Dec. 27, 2010)(internal citations, quotations, and footnote omitted). There is no dispute that STOFI qualifies under this standard. Therefore, the Court concludes that STOFI is immune from this suit.

Since the Court finds that it lacks subject-matter jurisdiction over the case, the case must be dismissed without prejudice. Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 768 (11th Cir. 1984).

Accordingly, it is now

**ORDERED:**

1. Defendant Seminole Tribe of Florida Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #5) is **GRANTED** based upon Indian sovereign immunity, and is otherwise **DENIED** as moot. The case is **DISMISSED WITHOUT PREJUDICE.**

2. The Clerk of the Court shall enter judgment accordingly, terminate any pending matters and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 21st day of January, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record